

**SO ORDERED.**

**SIGNED this 12 day of October, 2012.**

**_____
John T. Laney, III
Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO.: 09-70165- JTL |
| JOHNNY ALLEN WEBB & ) | |
| SANDRA FAYE WEBB, ) | |
| ) | CHAPTER 7 |
| Debtors. ) | |
| _____) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the trustee's Motion to Reopen Case and the debtors' objection to the motion. The Court heard oral arguments on the motion and objection on August 22, 2012. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons set forth below, the Court will deny the trustee's motion.

**Background**

Johnny Webb was diagnosed with congestive heart failure (CHF) in July 2007. The cause was allegedly unknown. He filed under chapter 7 in January 2009, and he received his discharge in June 2009. The debtor received a postpetition class action settlement in a product liability case for injuries arising from medicine taken prepetition, medicine causing CHF.[1] The debtor took the medication from June 2006 through May 2008, and the debtor alleges he did not know the medicine caused the injury until he saw a commercial, post-discharge, alerting him that the medicine could cause CHF. The trustee does not dispute the debtor was unaware of the injury's cause until after the case was closed. The trustee now moves to reopen the case to administer the settlement proceeds as property of the estate.

The trustee argues that because the drug caused injury prepetition, the cause of action arose prepetition, and thus the settlement proceeds are property of the estate.. Because the cause of action was neither administered nor abandoned, the trustee argues, the cause of action remained estate property under § 554(d) of the Bankruptcy Code, and the case should be reopened under § 350, which states that a case may be reopened to administer assets. The debtor argues that because the debtor did not know what, if anything, caused the injury until after the bankruptcy case was closed, the cause of action did not exist as of the filing date.

**CONCLUSIONS OF LAW**

The issue is whether the product liability cause of action was property of the estate as of the filing date, making the settlement proceeds property of the estate. Section

541(a)(1) defines "property of the estate" broadly as "all legal or equitable interests of the debtor in property as of the commencement of the case." The estate "includes causes of action belonging to the debtor at the time the case is commenced." 5 *Collier on Bankruptcy* ¶ 541.07 (16th ed. 2012). Moreover, the estate includes "claim[s] for injuries to the person, even if unliquidated at the time the petition was filed," In re Bonner, 135 B.R. 645, 647 (9th Cir. B.A.P. 1992), and postpetition settlement proceeds stemming from a prepetition cause of action are estate property, see Wischan v. Adler (Matter of Wischan), 77 F.3d 875, 877 (5th Cir. 1996). Thus whether the product liability cause of action—and the settlement proceeds—are property of the estate depends on whether the debtor had a cause of action as of the bankruptcy filing date.

"Property interests are created and defined by state law," Butner v. U.S., 440 U.S. 48, 55 (1979), and thus state law determines when a cause of action accrues. E.g., Witko v. Menotte (*In re* Witko), 371 F.3d 1040, 1043 (11th Cir. 2004) ("State law thus controls Witko's legal malpractice cause of action and determines whether that claim existed at the time Witko filed his bankruptcy petition."); In re Smith, 293 B.R. 786, 789 (Bankr. D. Kan. 2003) ("The court assumes that the question here—when did a cause of action for personal injury accrue?—is controlled by Kansas law."). The Court must determine when the debtor's cause of action for the CHF accrued under Georgia law.[2]

**Analysis of Accrual Under Georgia Law**

---

[1] As part of the settlement agreement, the debtor cannot disclose the name of the drug or the amount of the settlement. Without specifying the settlement amount, the debtor stated that the amount is less than what he used to make in a year.

[2] At the hearing on this motion, the trustee stated the product liability lawsuit was a class action filed in another state. The Court applies Georgia law because the debtor is a Georgia resident, because the medication was consumed in Georgia, and because no party cited to another state's law.

The statute of limitations for general "injuries to the person" is "two years after the right of action accrues." O.C.G.A. § 9-3-33. Many cases hold that the test for when a cause of action accrues is when the plaintiff could have sued successfully. E.g., Mobley v. Murray County, 178 Ga. 388 (Ga. 1934) ("The true test … to determine when a cause of action has accrued is to ascertain the time when plaintiff could first have maintained his action to a successful result."). Similarly clear is that ignorance of having a cause of action doesn't toll a statute of limitations. E.g., Everhart v. Rich's, 229 Ga. 798, 803 (1972) ("[M]ere ignorance of the existence of a right of action, absent the element of fraud, does not toll a statute of limitation."); Metlife v. Wright, 220 Ga. App. 827, 827 (1996) ("Plaintiff's ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation."). Thus for "a tort claim for personal injury the statute of limitation generally begins to run at the time damage caused by a tortious act occurs, at which time the tort is complete." Everhart, 229 Ga. at 801. Under this general rule, the debtor's cause of action would have accrued prepetition—the debtor was injured prepetition and thus he could have sued prepetition, and the debtor's ignorance of the cause would not avail him.

However, Georgia follows the discovery rule. The Court of Appeals first adopted the discovery rule in King v. Seitzingers, Inc., 160 Ga. App. 318 (1981). The issue there was, "[W]here the injury is known, but the cause of the injury is not known, has a cause of action accrued so as to start the statute of limitation running?" Id. at 319. The court held, "[W]e find the appellant's cause of action did not accrue and the statute of limitations did not run against him until he knew or though the exercise of reasonable diligence should have discovered not only the nature of his injury but also the causal

connection between the injury and the alleged negligent conduct of the appellee." Id. The Supreme Court of Georgia later restricted this holding "to cases of bodily injury which develop only over an extended period of time." Corporation of Mercer University v. National Gypsum Co., 258 Ga. 365, 365 (1988). So in cases of bodily injury developing over a period of time—i.e., the case at hand—the general personal injury rule of accrual does not apply. The debtor did not know the cause of his CHF prepetition; the cause of action therefore did not accrue prepetition.[3]

***Accrual* of a Cause of Action Versus *Existence* of a Cause of Action**

Case law suggests a difference between when a cause of action accrues under state law and when a cause of action exists as estate property—just because a cause of action has not accrued, does that mean no *interest* exists that belongs to the estate? In Segal v. Rochelle, the U.S. Supreme Court held as property of the estate a loss-carryback tax refund that accrued prepetition but which the debtor wasn't entitled to until after filing, reasoning that the refund was "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start." 382 U.S. 375, 380 (1966). Many courts consider the "pre-bankruptcy past" language as the test for whether property belongs to the estate; some of these courts ignore the date of accrual for whether a cause of action is property of the estate.

In In re Richards, 249 B.R. 859 (Bankr. E.D. Mich. 2000), the debtor filed under chapter 7 in March 1999 and was diagnosed with asbestosis in October 1999. The

---

[3] The O.C.G.A. contains a statute of repose for product liability actions. A plaintiff must sue within "ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury." O.C.G.A. § 51-1-11. At one point, the Court of Appeals held that this statute was a statute of limitations, see Lorentzson v. Rowell 171 Ga. App. 821, 825 (1984), which would mean the cause of action accrued on first consumption of the medicine. But the Supreme Court of Georgia later said that the general personal injury statute of limitations applies to product liability claims. See Smith,

exposure to asbestos occurred from 1960 through 1974. Under Michigan law, a suit alleging asbestosis accrues when the plaintiff knew (or should have known) of the asbestosis. The debtor argued that because he was unaware of the disease prepetition, the cause of action did not accrue prepetition, and therefore the claim was not property of the estate. The court concluded that "the test is not the date that the claim accrues under state law. … [T]he appropriate inquiry is whether the claim is 'sufficiently rooted in the pre-bankruptcy past." Id. at 861. See also Field v. Transcontinental Ins. Co., 219 B.R. 115, 119 (E.D. Va. 1998) ("[T]he bankrupt's estate includes not only claims that had accrued and were ripe at the time the petition was filed, but also those claims that accrued postpetition, but that are 'sufficiently rooted in the pre-bankruptcy past.'"), aff'd 173 F.3d 424 (4th Cir. 1999) (very short opinion stating the district court's opinion was "well reasoned and persuasive"); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011) ("Although the stated cause of action must have existed at the time of filing, the actual accrual date for state law purposes is not always the 'critical' factor for determining whether a cause of action is property of the estate. Claims that are immature at the date of filing are property of the estate if they are sufficiently rooted in the pre-bankruptcy past …."); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 396 (E.D.N.Y. 2007) ("In order to determine whether a cause of action that accrues after the petition has been filed but before the bankruptcy proceeding terminates becomes property of the estate, courts look to the connection between the cause of action and the petitioner's pre-bankruptcy past.").

---

Miller and Patch v. Lorentzson, 254 Ga. 111, 111 (1985) ("The nature of the injury sustained in this case is an injury to the person, and O.C.G.A. § 9-3-33 therefore applies to Lorentson's products liability claims.").

Looking at actions before bankruptcy—and not solely at the accrual date—is probably the majority rule for courts who have ruled on the issue. The Court's research yielded one case looking solely to the accrual date, and the facts are similar to the debtor's. In <u>In re Smith</u>, 293 B.R. 786 (Bankr. D. Kan. 2003), the debtor took a drug prepetition that caused damages postpetition, and the trustee moved to reopen the case after the debtor received a settlement. The Kansas discovery rule states that for wrongful acts and resulting injuries separated by time, a cause of action doesn't accrue until the injury is reasonably ascertainable.[4] The court noted that "if a cause of action had accrued by the time Smith's bankruptcy case was filed, it would have been an interest in property of the debtor that became property of the estate." <u>Id.</u> at 790. But the trustee did not establish the debtor could have reasonably ascertained prepetition she'd been injured. The cause of action thus accrued postpetition and was not property of the estate. <u>Id.</u>

**Discussion of Binding Authority**

Two somewhat-conflicting Eleventh Circuit Court of Appeals cases complicate things. Both cases involve legal malpractice claims out of Florida. The elements of a legal malpractice claim in Florida are (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence proximately causing damages, e.g., <u>Steele v. Kehoe</u>, 747 So. 2d 931, 933 (Fla. 1999); a Florida statute states that a cause of action accrues when the last element constituting the cause of action occurs, <u>see</u> F.S.A. § 95.031(1).

The court in <u>Johnson v. Alvarez (<i>In re</i> Alvarez)</u> concluded that a legal malpractice cause of action was estate property when the debtor's bankruptcy attorney allegedly

---

[4] Note that the Georgia discovery rule is more favorable to plaintiffs—a cause of action accrues only after the plaintiff knows the injury's cause.

negligently advised and filed a chapter 7 instead of a chapter 11. 224 F.3d 1273, 1279 (11th Cir. 2000). After filing the chapter 7, the attorney did not seek a timely conversion to chapter 11. Being in chapter 7 gave control of critical assets to the chapter 7 trustee, who allegedly sold the assets at a price the debtor claimed was much too low. The Bankruptcy Court for the Middle District of Florida held, "Clearly, with respect to the Debtor's claim that [the law firm] failed to seek the timely conversion of the case to a case under Chapter 11, all elements of the Debtor's claim occurred after the commencement of the Chapter 7 case. Equally, all elements of the Debtor's claim that [the law firm] failed to administer the bankruptcy case occurred post-petition for the simple reason that pre-petition there was no bankruptcy estate to administer." Alvarez v. Johnson (*In re* Alvarez), 228 B.R. 762, 765 (Bankr. M.D. Fla. 1998). The district court, without a published opinion, reversed.

On appeal, the debtor argued that the damages (i.e., the last element constituting the cause of action) did not occur until after the petition was filed or, alternatively, the damages occurred concurrently with the petition—no lawsuit accrued *before* the petition was filed and therefore the lawsuit was not estate property. The parties disagreed over whether the issue (whether the malpractice claim was property of the estate) was governed by state or federal law, and the court "decline[d] to decide the question of which law governs this determination." *In re* Alvarez, 224 F.3d at 1276. The court didn't decide because, after analyzing the issue under both state and federal law, applying either state or federal law resulted in the lawsuit being estate property.

Under state law, the element of damages (losing ownership and control of assets) occurred *as of* the filing—the damages need not occur *before* filing—and thus the lawsuit

accrued as of the filing. Id at 1277-78. Merely filing the case was sufficient injury. Under federal law, the cause of action was "also sufficiently rooted in his pre-bankruptcy past that it should be considered property of Alvarez as of the commencement of his bankruptcy case, and thus property of his estate" because the cause of action arose out of interactions with the law firm before filing. Id. at 1279. The court clearly uses two separate tests—one for if the issue is controlled by state law and one for if the issue is controlled by federal law.

In Witko v. Monette (*In re* Witko, 374 F.3d 1040 (11th Cir. 2004), the Eleventh Circuit held the legal malpractice claim at issue *wasn't* property of the estate. The court acknowledged that the Alvarez opinion "arguably … clouded previous choice of law authority" when the court declined to decide whether state or federal law controlled whether the cause of action was property of the estate. Id. at 1043. The court then clarified that state law "controls Witko's legal malpractice cause of action and determines whether that claim existed at the time Witko filed his bankruptcy." Id.

The court noted that under Florida law, "until the underlying action is concluded with an outcome adverse to the client (i.e., harm), a 'malpractice claim is hypothetical and damages are speculative.'" Id. at 1044 (quoting Silvestrone v. Edell, 721 So. 2d 1173, 1175 (Fla. 1998)). In other words, a legal malpractice cause of action "accrues when the client incurs damages at the conclusion of the related or underlying judicial proceedings"—a legal malpractice cause of action does not accrue before the underlying proceedings end because damages, as a matter of law, do not occur until then. Id. (quoting Blumberg v. USAA Cas. Ins. Co., 790 So. 2d 1061, 1065 (Fla. 2001)).

The malpractice suit in <u>Witko</u> arose from a divorce proceeding that ended postpetition but in which the negligence occurred prepetition. Because the underlying divorce proceeding did not end until after the debtor filed for bankruptcy—meaning the debtor incurred no damages until then—the cause of action did not accrue until postpetition. The claim was therefore not property of the estate.

The court in <u>Witko</u> did not disapprove of its opinion in <u>Alvarez</u>. The court merely distinguished that opinion, tersely asserting that in <u>Alvarez</u>, "the harm occurred at the same time Alvarez's attorneys filed his bankruptcy petition" while the debtor in <u>Witko</u> "had not yet suffered any harm" when he filed his bankruptcy petition. <u>Id.</u> The two opinions seem at odds. If the court in <u>Alvarez</u> used the same reasoning and state authority as it did in <u>Witko</u>—damages are speculative until the underlying proceedings are over—merely filing the chapter 7 would not in itself accrue a malpractice claim. For one, filing a bankruptcy case is not a termination of a proceeding but a beginning. Moreover, as the bankruptcy court noted in its <u>Alvarez</u> opinion, no damages existed at the moment of filing—the attorneys could have converted to a Chapter 11, or the trustee could have sold the assets at a price agreeable to the debtor. Failing to convert and the trustee selling at a low price caused the damages, not the filing.

Notably, the court in <u>Witko</u> did not mention the debtor's prebankruptcy past. It did mention, in passing, that the lawsuit in <u>Alvarez</u> "was found to be sufficiently rooted in the pre-bankruptcy past," <u>Witko</u>, 374 F.3d at 1044, but the court based the holding in <u>Witko</u> solely on whether the cause of action had accrued under state law. This Court believes the oft-quoted "pre-bankruptcy past" language from <u>Segal</u> was not intended as a test but rather a helpful, pithy description for why the loss-carryback refunds at issue

were property of the estate.  Being part of a prebankruptcy past is irrelevant to whether a cause of action arises under state law, and this is implicit in Witko.  *Everything* happened prepetition in Witko—the attorney-client relationship, the duty, the breach—except for the ending of the underlying proceeding, which by state law was when damages were fixed.  Under Florida state law, a cause of action does not accrue until the last element constituting the cause of action occurs.  The court looked solely to when the cause of action accrued under Florida law to determine whether the cause of action was estate property.

In Alvarez, in a footnote, the court noted that under Florida law, the statute of limitations for professional malpractice does not run until the cause of action is discovered or reasonably should have been discovered.  See 224 F.3d at 1273 n.7.  The court stated that "accrual" in the statute of limitations context is "irrelevant" and further stated that "a cause of action can accrue for ownership purposes in a bankruptcy proceeding before the statute of limitations begins to run."  Id. n.7. The court's analysis of "accrual" was thus based on "accrual" as used in the Florida statute stating, "A cause of action accrues when the last element constituting the cause of action occurs." F.S.A. § 95.031(1). That statute, though, is part of the statute of limitations.  So the court is saying accrual under the statute of limitations is irrelevant, but the court then points to a different section of the same statute to determine when a cause of action accrues.  Essentially, the court ignored "accrual" under the Florida discovery rule and looked only to "accrual" under the general statute of limitations—"when the last element constituting the cause of action occurred."

This Court is confused by the Eleventh Circuit's dicta here. First, the court justifies abandoning "accrual" under the discovery rule by drawing a distinction between accrual under the statute of limitations and accrual "for ownership purposes in a bankruptcy proceeding." Id. n.7. As noted, the court merely uses the definition of "accrual" under a different section of the statute of limitations—the court does not wholly ignore the statute of limitations. And this Court is unsure whether avoiding a state statute fixing the date of accrual under state law for bankruptcy purposes conforms with the idea that property interests are creatures of state law. Second, as we have seen, Florida law fixes damages—the last element constituting the cause of action—in professional malpractice actions at the conclusion of the underlying proceedings. Even under the different definition of "accrual," the damages in Alvarez cannot be said to have occurred immediately upon filing under Chapter 7 rather than at the termination of the bankruptcy case. The court in Witko did not discuss the statute of limitations or the appropriate definition of "accrual"—it was not a discovery rule case. It simply looked to when the cause of action accrued under state law: damages in malpractice cases occur after the underlying proceedings end, the underlying proceedings did not end until postpetition, and therefore the cause of action did not arise prepetition.

The Court is in a predicament. One Eleventh Circuit panel cannot overrule an earlier opinion from an Eleventh Circuit panel, Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), so both Alvarez and Witko are binding on this Court, and the Court believes holding one way potentially disregards one opinion while holding another way potentially disregards the other opinion. Under Alvarez, the Court can ignore Georgia's discovery rule and hold that the cause of action accrued when the

plaintiff could have successfully sued in Georgia under non-discovery rule product liability cases. Under <u>Witko</u>, the Court can look solely to when the cause of action accrued under state law; under state law the discovery rule applies. The Court acknowledges the distinction between the instant facts and the facts in <u>Alvarez</u> and <u>Witko</u>. Here, the issue is not whether the elements of the cause of action existed prepetition, whereas timing of damages was the issue in <u>Alvarez</u> and <u>Witko</u>. So in this case, the cause of action can be said to have accrued as of the filing date in that, had the debtor known the cause of the disease, he could have successfully sued. But again, using that general rule ignores "accrual" under the discovery rule in favor of "accrual" in the general sense, all for a federal law declaring that state law determines whether a cause of action has accrued. At the expense of disregarding <u>Alvarez</u>'s dicta stating that the discovery rule is irrelevant, the Court will not disregard the discovery rule.

**Potential Futility of Granting the Motion**

Even if the Court holds that the settlement proceeds are estate property and reopens the case, the trustee might not have any assets to administer. With a reopened case, the debtor would surely amend his Schedule C to exempt as much of the settlement as possible. The Georgia exemption statute exempts up to $10,000.00 of payments on account of personal bodily injury (not including pain and suffering or compensation for pecuniary loss). O.C.G.A. § 44-13-100(a)(11)(D). The statute also exempts payments compensating for loss of future earnings to the extent reasonably necessary for the support of the debtor and any dependents. <u>Id.</u> § 44-13-100(a)(11)(E). Moreover, the debtors' Schedule C indicates that the debtors have only used a few hundred dollars of their wildcard exemption. Pursuant to O.C.G.A. § 44-13-100(a)(6), the debtors are

allowed to exempt $600.00 each, plus the amount of any unused homestead exemption, in any property. The debtors did not take a homestead exemption, so the total amount of wildcard exemption available to the debtors, not accounting for any amounts used up, is $11,200.00. As stated, the debtors have only used a few hundred of this available exemption.

The settlement amount is subject to a confidentiality agreement, so the Court does not know the settlement size, but the debtor claims that the settlement was for less than what the debtors used to make in a year. Nothing indicates the debtors used to make a substantial amount of money. The settlement amount looks to be modest compared to the extent of the debtor's injury.

According to the debtor's brief, the congestive heart failure keeps the debtor from working. The debtor's bankruptcy petition states the debtor was disabled in 2009, and he apparently is still disabled. The debtor's brief states that the debtor's wife is also now disabled, requiring a scooter to get around. The debtors' total monthly income is $1059.00 in social security payments. The debtors' Schedule J shows a monthly net income of -$2.53, and that was when Mrs. Webb worked. Whatever is left over after the personal injury exemption and the unused wildcard exemption will be subject to the exemption for payments for loss of future earnings to the amount reasonably necessary for the support of the debtor and his dependents. Without deciding any future exemption issues, the Court will guess that whatever portion of the settlement is for lost earnings, that portion is probably reasonably necessary to support the debtor and his wife. Although not necessary for the holding, the Court wanted to note that granting the motion would likely result in no extra assets to administer.

## Conclusion

The Court will deny the trustee's motion to reopen. The Court will enter an order in accordance with this memorandum opinion.